1

2

3

4

5

6

7

8                          UNITED STATES BANKRUPTCY COURT

9                           FOR THE DISTRICT OF OREGON

10   In Re:                          ) Bankruptcy Case
                                     ) No. 07-63624-fra7
11   TROY L. PLUM                    )
                                     )
12   _____Debtor._____ )
                                     ) Adversary Proceeding
13   GELCO CONSTRUCTION CO.,         ) No. 08-6041-fra
                                     )
14                      Plaintiff,   )
                                     )
15            vs.                    )
                                     )
16   TROY L. PLUM,                   ) MEMORANDUM OPINION
                                     )
     _____Defendant._____ )
17

18           Defendant/Debtor owes Plaintiff Gelco Construction

19   approximately $300,000, the remaining balance on an unsecured loan.

20   Gelco seeks a judgment for the balance due and alleges in its complaint

21   that the loan was procured through Defendant's fraud, and that the

22   balance due should be excepted from discharge under Code § 523(a)(2)(A).

23   After considering the evidence presented at trial, the court finds for

24   the Plaintiff.

25   // // //

26   // // //


Page 1 - MEMORANDUM OPINION

# I. BACKGROUND

Defendant had an opportunity to purchase a business, PacWest Engineering ("PacWest"), for $700,000. The terms of the proposed sale required that he put $300,000 down, and pay the balance, with interest, in one year.

Lacking the money to pay the down payment, Defendant approached Plaintiff and asked for a $350,000 loan. Plaintiff's manager testified that the Defendant implied that the $350,000 was the total purchase price, and that Defendant had arranged for a loan to repay Gelco after the sale of the business closed. Defendant's explanation to Gelco was that he had been told by a loan broker that the loan would be easier to obtain if Defendant already owned the business. Defendant summarized the discussion in an e-mail to Plaintiff's manager on May 8, 2007:

> Thank you very much for going over my proposal for buying PWE Oregon. After our phone call followed up with OSU Federal and am very confident that I will be able to get an SBA loan within 3 months of buying PWE. If I got a $350,000 loan from Gelco I propose paying it back as follows. Initial loan based on 48 months at 15% for a monthly payment of $9,740.76. Upon closing the purchase deal, I would immediately begin the application process for an SBA loan. I[f] everything goes [as] predicted I would pay Gelco three monthly payments after which time my SBA loan would be approved an [sic] I would pay the loan off in full in the third month. With the full payoff could pay an additional sum for your time and effort.
>
> To help you feel more secure about the loan here is some overall financial information about PWE Oregon.
>
> Gross yearly revenue = $1,000,000.
> Gross year profit = $350,000.
>
> I appreciate your consideration in this matter and look forward to discussing it with you further.

On the strength of these discussions Plaintiff lent Defendant

Page 2 - MEMORANDUM OPINION

the sum of $350,000. The loan was funded by a check dated March 23, 2007. No financial statements were requested or offered, and Gelco did not inquire further into the nature of the business being purchased or the terms of the sale. There was no further inquiry into Defendant's financial condition. It should be noted that, while the parties had done some business together in the past, no formal business relationship existed between them at the time of the loan.

Defendant's purchase of the business closed on June 15, 2007. Three hundred thousand dollars of the money loaned to him was paid to the seller. The remaining $50,000 was used to pay credit card debt previously owed by the Defendant. Defendant did not disclose to the Plaintiff this intended use of the loan proceeds prior to the time the loan was approved. Indeed, it is clear that the Plaintiff believed that the entire $350,000 would be used to purchase the business. Plaintiff's representative testified that, had Plaintiff known of the need to pay down unrelated debt, or that the total price was twice what they had understood it to be, the loan would not have been made.

Defendant reasons that he needed to spend the $50,000 to reduce his credit card debt in order to improve his credit rating to the point where he could qualify for the SBA loan that would fund his repayment of the down payment, as well as the balance due on the purchase.

After the purchase of the business closed, its prospects, and the Defendant's, diminished rapidly. Due to a tightening economy and cutbacks in the construction business, the newly purchased business's revenues declined sharply. Moreover, despite his payoff of his credit card debt, Defendant's credit rating never improved to the point where he

could qualify for the needed small business loan.  Ultimately he was forced to file for bankruptcy relief.

Before filing his petition for relief, Defendant had managed to pay roughly $50,000 to Gelco.  According to Plaintiff's proof of claim, there remains a balance due of $298,414.00.

## II. DISCUSSION

Code Sec. 523(a) excepts from discharge a debt incurred

> (2)for money, property or services, or an extension,
> renewal, or refinancing of credit, to the extent
> obtained by–
>
> > (A) false pretenses, a false
> > representation, or actual
> > fraud, other than a
> > statement respecting the
> > debtors's or an insider's
> > financial condition.

In order to prove fraud under § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence the following five elements: (1) the debtor made a material representation, (2) with knowledge of its falsity, (3) with the intent to deceive, (4) on which the creditor justifiably relied, and (5) due to which the creditor sustained loss or damage.  In re Kirsh, 973 F.2d 1454, 1457 (9th Cir. 1992).

Under the Code, "false pretenses" contemplates circumstances in which a course of conduct – as contrasted with an explicit representation – is intended to mislead.  It includes an implied misrepresentation or conduct intended to create or foster a false impression.  In re Cole, 164 B.R. 951(Bankr. N.D. Ohio 1993).  Moreover, fraud or false pretenses may be discerned where the debtor has failed to disclose facts material to the lender in order to induce the lender to grant credit.  In re Roberti,

Page 4 - MEMORANDUM OPINION

183 B.R. 991 (Bankr. D. Conn. 1995)(Deliberate nondisclosure of a material fact may amount to a "false pretense" under § 523(a)(2)(A)).

Defendant told Plaintiff that he needed $350,000 to purchase the business he was interested in. He did not disclose that: (1) the funds being borrowed would only cover the down payment, (2) he would owe an additional $400,000, secured by the business, and (3) that $50,000 of the funds would be used to pay unrelated debts. He stated that he required $350,000 to buy the business, when in fact he needed $50,000 to clear up his shaky financial circumstances and $300,000 to obtain possession of the business, for which he would continue to owe an additional $400,000. While what Defendant represented may have been true in the strictest sense, it was meant to conceal from the Plaintiff good reasons not to part with its money.

Particularly troubling is Defendants' failure to disclose his intention to use $50,000 of the money borrowed to pay existing indebtedness. Defendant reasoned that paying these debts, being necessary to enhance his credit and thus facilitate a subsequent loan, was part of the cost of purchasing the business. This is too much of a stretch: buying a business, or taking out a loan, and paying down old debt to enable a purchase are separate matters, particularly insofar as the Defendant benefitted from the elimination of the old debt whether he bought the business or not. He was obligated to advise Plaintiff of his intentions before he induced it to lend the money.

Plaintiff's witness testified that, had Plaintiff known of the nature of the purchase, or of Defendant's need to pay $50,000 in old debt, it would not have lent him the money. No doubt Plaintiff (and

Page 5 - MEMORANDUM OPINION

Defendant, for that matter) would have been spared a lot of grief had it enquired into the details of the purchase, or of Defendant's financial strength. However, a creditor's reliance on a prospective borrower need only be justifiable, not reasonable. <u>Field. v. Mans</u>, 516 U.S. 59(1995). Plaintiff's negligence in failing to discover the correct circumstances of the transaction is not a defense. <u>In re Apte</u>, 96 F.3d 1319,1322 (9th Cir. 1996); <u>In re Kirsh</u>, 953 F.2d 1454 (9th Cir. 1992). Defendant was known to Plaintiff through their good working relationship prior to the loan, and Plaintiff had no reason to doubt him. Its reliance, while unfortunate, was justifiable.

### III. CONCLUSION

Plaintiff has a claim against Defendant for $298,414. The claim was incurred as a result of Defendant's false pretenses, and for that reason cannot be discharged. A money judgment should be entered for Plaintiff in the amount of the claim with a determination that the claim is excepted from discharge.

The foregoing constitutes the court's findings of fact and conclusions of law. Counsel for the Plaintiff shall submit a form of judgment consistent with this opinion.

FRANK R. ALLEY, III
Bankruptcy Judge

Page 6 – MEMORANDUM OPINION